UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENNOTI, INC., | : JURY TRIAL DEMANDED |
| Plaintiff, | : CIVIL ACTION NO. |
| v. | : O8CV03118 (JGK) |
| COMPLAINTSBOARD.COM and ELIZABETH ARDEN, | : (ECF) |
| Defendant. | : |

## CIVIL ACTION COMPLAINT

Plaintiff, by its attorney, alleges for its complaint as follows:

### I. JURISDICTION AND VENUE

1.     This Court has jurisdiction of this action based on 28 U.S.C. §1332, because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because the controversy is between a citizen of a state and citizens of a foreign state.

2.     Personal jurisdiction over the Defendant also is proper based on New York Civil Practice Law and Rules § 302, and Rule 4 (h) of the Federal Rules of Civil Procedure.

3.     Personal jurisdiction and venue in this action are predicated on 18 U.S.C. § 1965 and on 28 U.S.C. § 1391(b), since certain Defendant transact their affairs in the Southern District of New York, and certain activities of the Defendant giving rise to this action took place in the Southern District of New York.

## II. DEFENDANT'S CONTACTS TO THE JURISDICTION OF THIS COURT

4.      Defendant intentionally and/or recklessly published defamatory information about Plaintiff, a Nevada corporation with and New York resident, and published same via the Internet within New York County, the State of New York, resulting in significant injury and harm to Plaintiff and its reputation. The bulk, if not all of the harm has occurred and will continue to occur in the State of New York, which gives rise to a claim cognizable in the State of New York.

5.      At all times material hereto, Defendant engaged in and continue to engage in substantial activity within the State of New York by, inter alia, engaging in a scheme to extort money from Plaintiff and continuing to engage in solicitation or service activities within the State of New York, which gives rise to a claim cognizable in the State of New York.

6.      Defendant's tortious conduct is directed specifically towards Plaintiff, which is a business based in New York State.  As such, it is fair, just and reasonable to require Defendant to defend this action in New York State.

7.      While Defendant is based in California, the website she operate is interactive. Defendant and her website solicits and receives business from New York State residents as part of the operation of the web sites.

8.      Defendant's website performs several functions which make the web sites interactive in nature. One of the functions of Defendant's website is to encourage and allow individuals to post complaints about businesses such as Plaintiff.  When individuals seek to post a complaint on Defendant's website, they are required to register with the website and provide identifying information such as a name and email.

9.      Based on the foregoing, Defendant's website creates interactions between Defendant and users, including business transactions. Therefore, Defendant's website is

interactive and commercial, and provide sufficient minimum contacts to subject Defendant to the jurisdiction of this Court.

### III. THE PARTIES

10. Plaintiff, Bennoti, Inc. ("Bennoti") is a corporation duly organized under the laws of the State of Nevada, with its principal place of business in New York County, the State of New York.

11. Upon information and belief, Defendant, Elizabeth Arden ("Arden"), is a resident of the State of California.

12. Upon information and belief, Defendant publishes a website that is available and has been visited by persons in New York County, the State of New York, and throughout the United States and the world.

13. Defendant owns and operates a website, "The Complaints Board," located at http://www.complaintsboard.com.

14. Defendant Arden is the domain name registrant of the website http://www.complaintsboard.com.

15. Upon information and belief complaintsboard.com and The Complaints Board are aliases of defendant Arden.

### IV. GENERAL ALLEGATIONS

16. Plaintiff, Bennoti, Inc., based in New York City, was founded in 2006 as a wholesare and direct response marketing and merchandising company coffee espresso machines, coffee and related products.

3

17.     Plaintiff spends millions of dollars each year on TV commercials, infomercials, catalogues, and magazines to promote its coffee products.

18.     As a further means to promote its products, Plaintiff Bennoti created an Internet website, at http://www.Bennoti.com, to enable consumers to learn about Plaintiff's products, and to provide a conduit for prospective and current consumers to purchase Plaintiff's products.

19.     Plaintiff relies on consumers' knowledge of its name and product names learned from Plaintiff's television advertising.  Consumers can find Plaintiff's website by entering Plaintiff's name or product names in any Internet search engine, such as Google or Yahoo, and the search engine will list search results, which should rank Plaintiff's website as the top website for information based on Plaintiff's name or product names.

20.     However, Defendant's website www.complaintsboard.com appears as a search result on various search engines when consumers input Plaintiff's name or product names in a Internet search engine, causing consumers to be exposed to Defendant's defamatory statements regarding Plaintiff and its products and causing consumers to be mistakenly diverted to Defendant's website when they intended to access Plaintiff's website.

21.     The Defendant encourages consumers to complain about companies such as Plaintiff's business.

22.     Upon information and belief, once Defendant receives the complaints from the consumers they review them and actively select which complaints to publish on their website.

23.     Defendant's publication of these consumer complaints is with reckless disregard for the truth as Defendant does not verify such complaints for accuracy; rather they simply publish the chosen complaints and include additional language and graphics to imply that it is an established fact that the company named in such complaint is scamming consumers.

24.     In addition to failing to verify the accuracy of the chosen complaints, Defendant adds headlines over the complaints creating a stronger impression of wrong doing by Plaintiff.

25.     On Defendant's first page that a consumer sees when coming to Defendant's web site from a search engine, Defendant features a picture from Plaintiff's commercial of Plaintiff's spokesman with a Bennoti espresso machine and the Bennoti trademark featured prominently. Onto this photograph, Defendant has added a comic strip style balloon containing words appearing to come from the spokesman's mouth, stating, "Don't call us! We're busy cheating customers!"

26.     Defendant publishes and make available for viewing approximately 6 false or inflated stories about Plaintiff.

27.     Defendant does not allow customers of Plaintiff, who had a complaint against Plaintiff which they posted on Defendant's web site, a means to withdraw their complaint, once they received satisfaction from Plaintiff.

28.     Defendant are using the false and defamatory material about Plaintiff for the purpose of, among other things, diverting "hits" and attention of Internet users, initially searching for Plaintiff's goods, away from Plaintiff's website and directing them to Defendant's website.

29.     Defendant's diversion of "hits," and their publication of false and defamatory "complaints" about Plaintiff, with reckless disregard for the truth of such "complaints," has caused numerous consumers to mistakenly believe that Defendant's engage in false and deceptive business practices.

30.     The contrived numerosity of the complaints gives the appearance of legitimacy to the complaints, and the multiple complaints are absorbed by search engines on the Internet,

resulting in higher placement of the defamatory material on Internet search engines. This enables the defamatory material to be viewed by greater numbers of Plaintiffs customers and potential customers.

31. In addition, Defendant's website is for-profit interactive website. When consumers come to Defendant's web site, from a search engine search of "Bennoti" they see complaints about Plaintiff, and they also see solicitations for other coffee machines and coffee products. In this way Defendant pirates the millions of dollars Plaintiff spend to develop consumer awareness of its coffee products brand, and then diverts those consumers to Plaintiff's competitors.

32. Those competitors solicit and receive on-line payments from consumers nationwide, including in New York State. Defendant profits each time a customer of Bennoti is diverted to one of those competitor's websites, thus, Defendant directly profits from its web-related activity in New York State.

33. Thus, Defendant stand to profit by continually soliciting postings like the false, defamatory, and harmful postings regarding BENNOTI that can be found on Defendant's website.

34. Defendant are well-aware of the negative effects and far reach of the reports on their website-and intend this damage to occur. The more negative content on the website, the more users will visit the website, thus increasing revenues for the Defendant in the form of "clicks" on the advertisements of Plaintiff's competitors there.

## VI. NO IMMUNITY UNDER THE COMMUNICATIONS DECENCY ACT (CDA)

35.     The instant claims are not barred by the Communications Decency Act (CDA), 47

U.S.C. § 230, because Defendant are responsible for the creation or development of information"

provided by individuals submitting Rip-off Reports in response to Defendant's solicitation.

36.     Defendant are information content providers with respect to the website postings.

Upon information and belief, Defendant also create fictional complaints themselves, which are

then attributed to people with false names or "anonymous" titles from fictional locations around

the United States, despite knowing that such complaints are false and slanderous.

37.     In addition Defendant create headings, report titles, and messages for the reports.

38.     Thus, Defendant are information content providers because they are responsible,

in whole or in part, for the creation or development of third party defamatory messages.

39.     Accordingly, Defendant are not entitled to immunity under the CDA in this case

### FIRST CAUSE OF ACTION

(Defamation *Per Se* Of Business Reputation)

40.     Plaintiff realleges and reavers paragraphs 1 through 68 as if fully set forth herein.

41.     Defendant's website was created for commercial and economic gain and thus the

selected stories published by Defendant are designed to entice customers to purchase

Defendant's product, services and advertising opportunities.

42.     The stories and headlines published by Defendant regarding Plaintiff are false

and were published with malice and reckless disregard for the truth or falsity of such stories,

with the intent to injure Plaintiff, its business reputation and to illegally divert customers away

from Plaintiff.

43. The false statements of fact published on Defendant's website are unambiguous and when read and construed by Internet users searching for Plaintiff's products, the libelous nature of such statements is clear.

44. As a direct and proximate result of Defendant's publication of the defamatory information, Defendant have inflicted immeasurable damage and injury upon Plaintiff's business and reputation, including, but not limited to, loss of significant profits and loss of goodwill.

45. As Plaintiff's principal place of business is located in New York County, the State of New York, the bulk of the damages and injury to Plaintiffs business and reputation has occurred in the State of New York.

46. Defendant's statements have, at all times material hereto, been directed and continue to be directed to residents of the State of New York.

## SECOND CAUSE OF ACTION

### (Unfair Competition)

47. Plaintiff realleges and reavers paragraphs 1 through 67 as if fully set forth herein.

48. Defendant's web sites contain false or misleading representations concerning Plaintiff's business that are to the likely commercial detriment of Plaintiff. In fact, Defendant's website contains false and defamatory statements which have injured Plaintiff's business.

49. Accompanying this defamatory content on Defendant's web site are advertisements from Plaintiff's competitors, which are unfairly intended to divert Plaintiff's customers to these competitors' e-commerce web sites.

50. Defendant have failed and refused to cease and desist from publishing the false and defamatory statements on their website and engaging in the acts described in this complaint,

including from diverting Plaintiff's customers, although plaintiff has demanded they do so. Unless enjoined from doing so, Defendant will continue this conduct and cause plaintiff irreparable injury.

WHEREFORE, Plaintiff Bennoti, Inc. demands judgment as follows:

    (i)    On the First Cause of Action for defamation of business reputation a judgment with costs in the amount of at least costs in $10,000,000 and an Order permanently enjoining Defendant from publishing the false and defamatory statements on their website;

    (ii)    On the Second Cause of Action for unfair competition a judgment with costs in the amount of at least costs in $10,000,000 and an Order permanently enjoining Defendant from publishing the false and defamatory statements on their website; and

    (iii)    Such other and further relief as the Court deems just and proper.

Dated: March 25, 2008
     New York, New York

Respectfully submitted,

The Mortner Law Office, P.C.

By: _____
Richard M. Mortner (RM-0019)
Attorney for Plaintiff
40 Broad Street, Suite 500
New York, NY 10004
(212) 480-2181